Maria S. MIGUEL, Petitioner,

v.

DEPARTMENT OF THE ARMY,
Respondent.

Appeal No. 83–878.

United States Court of Appeals,
Federal Circuit.

Feb. 7, 1984.

Susan Silber, Takoma Park, Md., for petitioner. With her on the brief was Burton F. Boltuch, and Marci Seville, Oakland, Cal.

M. Susan Burnett, Washington, D.C., for respondent. With her on the brief were J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, and Thomas W. Petersen, Asst. Director, Washington, D.C.

Before KASHIWA, Circuit Judge, NICHOLS, Senior Circuit Judge, and BENNETT, Circuit Judge.

BENNETT, Circuit Judge.

Maria S. Miguel (petitioner) appeals from a final order of the Merit Systems Protection Board (MSPB), No. SF07528110898 (January 31, 1983), that denied review of the presiding official's decision sustaining her removal based on unauthorized possession of government property. Petitioner asserts that her removal was unlawful for the following reasons: (1) the penalty imposed was so disproportionately harsh as to constitute an abuse of discretion; (2) the Department of the Army's (agency) failure to provide the MSPB with a full agency record was in violation of civil service law and regulations; and (3) the agency's denial of petitioner's right to union representation under a collective bargaining agreement constituted reversible error. We *reverse* and *remand.*

## BACKGROUND

At the time of her removal, petitioner was a civilian employee of the United States Army who was employed as a commissary cashier at the Presidio, San Francisco, California. Due to pilferage at the commissary, management officials initiated certain security measures, including the installation of a camera security system and posting of notices warning employees that they were subject to dismissal for theft.

A cabinet in the manager's office at the commissary was used for temporary storage of misplaced, damaged and returned items. On January 13, 1981, Mr. Trapalis, Assistant Commissary Officer, put two bars of soap on one of the shelves of the salvage cabinet. When Mr. Trapalis returned the next morning, he noticed that the soap was missing. For this reason, he asked Mr. Carroll, Security Manager, to review the video tape taken by a security camera located in the manager's office. The tape showed a woman removing the soap, and Mr. Trapalis, Mr. Carroll and Mr. Rose, Commissary Officer, all identified petitioner as the woman seen on the tape.

On January 14, 1981, Mr. Carroll requested a meeting with petitioner. At the meeting, attended also by the commissary officers, he informed her that a tape had been made which showed her theft of the soap. Mr. Carroll told petitioner that she had a choice of either retiring or having the matter turned over to the police. Petitioner was very upset at the meeting and said words to the effect, "I have done a bad thing, I should not have done it." Mrs. Brabo, Chief Cashier Supervisor, testified that on January 15, 1981, she received a telephone call from petitioner, who stated that she had done a bad thing, she had taken the soap.

On March 19, 1981, a notice of proposed removal was presented to petitioner by Mr. Rose. The reason given for the proposed action was "unauthorized possession of U.S. Government property." The notice stated:

Specifically, at approximately 6:12 p.m. on 13 January 1981 you placed 2 bars of Neutrogena Beauty Soap, valued at $1.05

each, into your purse. The soap in question was U.S. Government property. You did not pay for the soap.

When petitioner was informed that Mr. Rose wanted to see her concerning her proposed removal, petitioner requested that a union representative be present. Mr. Rose told her to report to his office immediately and that her refusal to do so would border on insubordination. Petitioner complied, and received the notice of proposed removal.

By a memorandum dated June 12, 1981, petitioner was notified of the decision to remove her, effective June 15, 1981. Petitioner appealed the removal action to the MSPB on June 19, 1981.

In a decision dated September 29, 1981, the presiding official of the MSPB affirmed the agency's decision to remove petitioner. The presiding official found that the charge of theft of government property was proven by a preponderance of the evidence based on the following: (1) the video tape of the theft; (2) the three identifications of petitioner by her supervisors; (3) petitioner's admission to her immediate supervisor, Mrs. Brabo; and (4) petitioner's voluntary confession. With regard to petitioner's contention that the agency committed harmful error in that she was not notified of her right to union representation, the presiding official stated that:

> [i]n view of the seriousness of the offense, and the strong evidence against the appellant, I find that the agency would have reached the same result in appellant's case even if her union representative had been present. Accordingly, I find that the procedural error complained of was not harmful.

The presiding official also concluded that petitioner's removal was taken for such cause as would promote the efficiency of the service. Finally, on the issue of mitigation of the penalty, the presiding official concluded that removal was reasonable, based on the following factors: (1) the nature and seriousness of the offense; (2) the clarity with which petitioner was on notice regarding the seriousness of the offense;

(3) petitioner's special position of trust as cashier; and (4) the fact that petitioner's misconduct was intentional.

In an order dated January 31, 1983, the MSPB denied the petition for review, noting that it found no harmful procedural error in the agency's failure to advise petitioner of her right to union representation.

## DISCUSSION

### I

Petitioner asserts that the penalty of removal was so harsh and disproportionate to the offense, the theft of soap valued at $2.10, as to constitute an abuse of discretion. Under the facts of this case, we agree. This is the primary issue in the case.

■ It is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound discretion of the agency. As stated by the United States Court of Claims in *Brewer v. United States Postal Service*, 647 F.2d 1093, 1098 (1981), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982), the court will defer to the agency's choice of penalty unless its severity appears "totally unwarranted" in light of the relevant factors. Only in rare cases has the court found the agency's penalty to be grossly disproportionate to the offense charged. *See, e.g., Ross v. United States*, 229 Ct.Cl. 755 (1982); *Boyce v. United States*, 543 F.2d 1290 (Ct.Cl.1976); *Power v. United States*, 531 F.2d 505 (Ct.Cl.1976); *Grover v. United States*, 200 Ct.Cl. 337 (1973). Whether in a given case the penalty imposed by the agency amounts to an abuse of discretion depends upon the unique circumstances of each case.

■ Under the facts before us, the penalty of removal amounted to an abuse of discretion. At the time of her removal, petitioner had served with the agency for 24 years, received numerous commendations, and had never previously been subject to disciplinary action. The four factors relied on by the presiding official, as noted earlier, are certainly relevant, but by no means exclusive. Specifically, it is the "na-

ture and seriousness" of the offense which we find significant in this case. Theft of government property is indeed a very serious offense, but there appears to have been little recognition of the *de minimis* nature of the objects taken—i.e., two bars of soap with a total value of $2.10. Even the agency's table of penalties states, in part, that the "[p]enalty imposed will be determined primarily by value of articles stolen" in cases of theft.[1] We do not condone theft regardless of the amount involved, but the relatively minor nature of the theft leads us to the conclusion that this harsh discharge of a 24-year employee with an otherwise unblemished record was a penalty grossly disproportionate to the offense and thus was an abuse of discretion.

In light of our holding that the penalty imposed constituted an abuse of discretion, it is necessary to remand the case to the MSPB for a determination by the agency of an appropriate lesser penalty. As mentioned, petitioner also raises two procedural challenges relating to her removal. Although we have already determined that petitioner's removal was unlawful, a discussion of these alleged procedural errors is relevant to the relief available to petitioner on remand.

## II

■ The contention that the removal was procedurally defective because the agency failed to provide the MSPB with a complete record is based on the fact that the Army failed to forward at least two written submissions by petitioner in response to the notice of proposed removal. In the course of the MSPB proceedings, the Army advised the presiding official, by letter dated August 12, 1981, that:

> Inadvertently omitted from the Agency's Action File were the materials and response submitted by the Appellant in response to the Notice of Proposed Removal. The documents have been requested

from TSA, Fort Lewis, WA and will be submitted upon receipt.

Apparently the Army has been unable to locate these documents, which are not included in the MSPB record and, therefore, not before this court.

As petitioner points out, 5 U.S.C. § 7513(e) (1982) states, *inter alia,* that "the answer of the employee [to the notice of proposed action] when written . . . shall be maintained by the agency and shall be furnished to the Board upon its request and to the employee affected upon the employee's request." *See also,* 5 C.F.R. §§ 752.406, 1201.25(a)(4) (1982).

As a preliminary matter, respondent argues that since petitioner did not raise this issue before the MSPB, she is precluded from raising it on appeal to this court. *See Grover v. United States,* 200 Ct.Cl. at 345. Respondent's argument is premised on the assumption that petitioner was on notice that the Army might not have provided the missing documents to the MSPB. The evidence which respondent relies upon is the letter of August 12, 1981, mentioned earlier, in which the Army stated that it had inadvertently misplaced the documents, but that they "will be submitted upon receipt." We agree with petitioner that this letter can hardly be considered "notice" that the documents would not be provided. We therefore conclude that petitioner is not barred from raising this issue on appeal.

As this court recognized in *Shaw v. United States Postal Service,* 697 F.2d 1078 (Fed.Cir.1983), the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111 (codified in scattered sections of 5 U.S.C.), specifically states that procedural errors can vitiate the agency's decision only if they are "harmful." *Id.* at 1080 and citations; *see* 5 U.S.C. § 7701(c)(2)(A) (1982). By regulation, the MSPB places the burden on the petitioner to show that the error was harmful, i.e., "caused substantial harm or preju-

---

1. The table of penalties provides that in cases of theft, first offense, the range of penalties is 1- to 10-day suspension, or removal. However, it is clear from the record that it was the policy of the deciding official to impose the maximum penalty for all thefts regardless of the agency guidelines.

dice to his/her rights." 5 C.F.R. § 1201.-56(c)(3) (1982).

▮ Petitioner asserts that this court cannot assess whether the error was harmful, as there is no opportunity for this court to review the missing documents, and a remand to the MSPB is therefore required. Petitioner also asserts that the harm is self-evident, particularly in light of the fact that petitioner chose not to testify at the MSPB hearing, relying instead on her written submissions. In response, respondent asserts that any procedural error flowing from the agency's failure to provide the MSPB with the documents is clearly harmless, as petitioner cannot demonstrate that the MSPB would have reached a different result.[2] We need not decide now whether the Army's loss of these documents was harmful error, and thus a remand is required, in light of our conclusion in part I concerning mitigation of the penalty. Since we are remanding on other grounds, these documents, or their contents, should be established by secondary evidence, if possible, in order to reach an informed decision regarding mitigation.

### III

Petitioner also contends that there was harmful procedural error because she was not advised of her right to union representation. Specifically, petitioner contends that the Army was not in compliance with article VII, section 3(A) of the collective bargaining agreement, which states in relevant part:

*Section 3.* The employer agrees that:

A. Prior to a meeting between a supervisor and an employee in which the supervisor has decided to propose initiation of a written reprimand, a suspension or a removal action against the employee, the supervisor will advise the employee in writing of his right to be represented and give the employee the opportunity to select his representative and to have his representative present.

Petitioner asserts that at no time did any of her supervisors advise her of the right to union representation.

In his opinion, the presiding official seems to concede that petitioner was denied the right to representation, but concluded that the procedural error was not harmful, as the agency would have reached the same result even if a union representative had been present. The MSPB, on the other hand, noted that (1) petitioner did not request union representation at the January 14, 1981, meeting with the security officer and commissary officers, and (2) the "specific circumstances pursuant to which an employee has a right to union representation" are not present under the facts of this case. In other words, the MSPB concluded that no right had been violated.

▮ The first reason given by the MSPB for rejecting petitioner's claim of harmful procedural error, that she did not request union representation, is irrelevant. The provision of the collective bargaining agreement that petitioner claims was violated obligates the supervisor to advise the employee, in writing, of his or her right to representation. A major purpose of this provision is to insure that an employee is cognizant of his or her right to representation, and it is more than a little ironic to assert that an employee loses this right by not evidencing knowledge of the fact that this right exists.[3]

▮ The second reason given by the MSPB for denying petitioner's claim of procedural error is that the provision of the collective bargaining agreement relied upon is inapplicable. Presumably this conclusion

---

**2.** It is very unlikely that petitioner could have effectively rebutted the strong evidence against her regarding the theft of the soap. It is possible, however, that evidence relating to mitigation of the penalty could have had some impact on the MSPB's decision.

**3.** Perhaps the MSPB was referring to 5 U.S.C. § 7114(a)(2)(B) (1982) which permits a union representative to be present at an examination of an employee if (1) the employee reasonably believes that disciplinary action might result, and (2) the employee requests representation. There is no such requirement, however, in the agreement provision relied upon by petitioner.

is based on the assumption that the meeting of January 14, 1981, was not between "a supervisor and an employee" and no decision had been made to propose initiation of the removal action.[4]

Respondent asserts that the meeting of January 14, 1981, did not fit within the letter of the agreement because the meeting was initiated by Mr. Carroll, a security officer, not one of petitioner's supervisors. Respondent also asserts that no decision had been made to remove petitioner at the time of the meeting. This is not credible. Mr. Carroll threatened petitioner with criminal prosecution if she did not quit her job. It is reasonable to assume that petitioner's supervisors were aware of Mr. Carroll's intended actions because they reviewed the tape with him on the day that the theft was discovered and the interview with petitioner took place. It is uncontroverted that petitioner became very upset at the meeting, and made statements against her interest. Clearly the agency should have informed petitioner of her right to representation prior to the meeting.

■ Respondent asserts that even if there was a violation of the collective bargaining agreement, there is sufficient support for the presiding official's conclusion that the error was harmless. Certainly it is difficult to dispute the finding that the agency had sufficient evidence apart from petitioner's confession to sustain the charge of unauthorized possession of government property. Whether the denial of union representation would have impacted on the penalty imposed by the agency, however, is not so apparent. It is difficult to assess whether the presence of effective union representation at the January 14, 1981, meeting would have influenced the agency's decision regarding disciplinary action for the efficiency of the service. What is certain is that petitioner was legally entitled to make her case for mitigation at this meeting with the aid of union representation. We hold that the denial of union representation in this case is an important factor that the agency and the MSPB should consider on remand for determination of an appropriate lesser penalty.

### CONCLUSION

Under the facts of this case, the penalty of removal amounted to an abuse of discretion which failed responsibly to balance all of the relevant factors, and the final order of the MSPB sustaining the removal is therefore reversed. The agency charge of unauthorized possession of government property is supported by substantial evidence, see 5 U.S.C. § 7703(c) (1982). However, some lesser penalty than discharge is appropriate. We therefore remand the case to the MSPB for a determination by the agency of what lesser penalty is appropriate, taking into consideration the agency's denial of petitioner's right to union representation. Petitioner should also be given the opportunity, if she wishes, to offer evidence regarding mitigation in light of the agency's loss of the documents relating to her response to the notice of proposed removal.

### REVERSED AND REMANDED.

NICHOLS, Senior Circuit Judge, concurring and dissenting.

I agree with most of what is said in the court's opinion and need not say it again. I differ in one rather fundamental way. I believe the MSPB should itself redetermine the penalty in light of our opinion and not re-remand that issue to "the agency," i.e., the Army. My reasons for this are as follows.

It is quite clear to me that the denial of union representation to petitioner by the Army, contrary to its contract, was harmful legal error at the first or agency stage. Since the MSPB accords such substantial deference to the position of the agency respecting penalty, a procedural error that directly relates to penalty is by far the most

---

**4.** In its final order, the MSPB did not articulate its reasons for its conclusion that the provision was inapplicable.

harmful procedural error an agency can commit. If the error related to the factual determination whether the employee committed the offense, it would be far less likely to be harmful for the simple reason that the MSPB remakes this determination *de novo.* *See* Davis, *Judge,* dissenting, in *Cheney v. Department of Justice,* 720 F.2d 1280 (Fed.Cir.1983). I differed with Judge Davis in that case, not because I considered the above analysis faulty, but because I could not agree with him that the so-called "deciding official," who would have mitigated Cheney's penalty, ever had authority to make a determination that would bind the agency. It is perfectly obvious to me that the union representatives, if not wrongly excluded, would have perceived, just as we do, that the excessive penalty was the most vulnerable point in the agency case. If an error is not perceivably harmless, as it was held to be in Cheney's case by the majority, it is harmful, *i.e.,* the harmless error doctrine cannot be invoked. It is not enough to speculate it may have been harmless. I cannot understand why the court will not state foursquare that the error was harmful here.

The MSPB has jurisdiction to mitigate agency penalties it finds to be unreasonably harsh. The effect of harmful error in the agency determination of penalty, before the MSPB, must be that the agency determination is entitled to no deference. The only obvious alternative for the MSPB would be to declare the adverse action illegal in its entirety and this would be an instance of overkill that the Civil Service Reform Act did not intend. A *de novo* determination of penalty by the MSPB is adequate to take the harmfulness out of the error and make it harmless. I therefore believe it was error on the part of the MSPB to accord the usual deference in face of a manifestly harmful agency error. This error can be and should be completely corrected by the MSPB without a re-remand. Of course, the Army can be heard by the MSPB as to what the penalty should be.

A re-remand to the Army is needless, and there is nothing in the court's opinion to preclude the Army from proposing a penal-ty only slightly less onerous and having the MSPB accord it the usual deference.

If, however, this court insists on the re-remand to the Army, clearly the Army should redetermine the penalty on perfectly open terms. Its consideration should not be limited, as the court's "conclusion" does, to matter related in some way (how?) to the previous denial of union representation or the loss of documents. If the union elects to represent petitioner before the agency and she wishes such representation, the union should be perfectly free to make a case for mitigation on any ground, just as it would have been had the agency acted legally the first time, and so should her counsel if she elects representation by a lawyer.