John V. DeWITT, Petitioner,

v.

DEPARTMENT OF the NAVY, Respondent.

Appeal No. 84–959.

United States Court of Appeals, Federal Circuit.

Nov. 9, 1984.

Jerry H. Langer, San Francisco, Cal., argued, for petitioner.

Stephen R. Bergenholtz, Washington, D.C., argued, for respondent. With him on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Washington, D.C.

Before MARKEY, Chief Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.

BISSELL, Circuit Judge.

John DeWitt (DeWitt) petitions this court for review of a final decision of the Merit Systems Protection Board (Board), Docket Number SF07528310150. The Board sustained his removal for unauthorized possession of government property. We *affirm*.

## BACKGROUND

DeWitt was employed by the Department of the Navy (agency) as a Store Worker, WG–4, stocking shelves in the commissary. The agency charged him with unauthorized possession of government property because he took from the commissary various grocery items worth approximately fourteen dollars. For the efficiency of the service the agency removed him. 5 U.S.C. § 7513(a).

On Saturday, May 22, 1982, a supervisor noticed DeWitt acting in a peculiar manner and then departing the store with an unusually large bulge under his work smock. The supervisor notified the commissary store officer who contacted the base police. When the patrolmen arrived they informed DeWitt that he was suspected of taking items from the commissary and placing them in his car. He denied that he had taken anything from the commissary and said that he "had not done anything wrong." DeWitt consented to a search of his car, but on the way to the car he deceived the patrolmen with a ruse and fled the scene. After a day-long surveillance of his car it was impounded. On Sunday, May 23, 1982, DeWitt arrived to claim the car. He again consented to a search of the car which produced still partially frozen fish and turkey, three boxes of plastic bags, and five bars of soap. Conflicting statements were made at this time and during the subsequent investigation about the purchase of these items at local commercial stores.

The agency then conducted a painstaking investigation, including interviews with DeWitt, his supervisors and co-workers, and price comparisons of items at the commissary and neighborhood stores. The investigation revealed that the labels and prices on the items in DeWitt's car were identical to those in the commissary and were different from those in the commercial stores. Furthermore, these stores did not even stock some of the items.

At the Board hearing, DeWitt again denied taking the items. He admitted that he left the premises when first confronted by security. Although he testified that he did so because he had a loaded gun in his car and was afraid he would get in trouble if it were found by security, it is undisputed that in their thorough search the base police found no such weapon. With regard to the items found, DeWitt offered no explanation. He testified that he had purchased fish at a Food Bowl on May 20, 1982. Upon further questioning, he admitted that the partially frozen fish found on May 23, 1982, were not the same fish. When asked specifically where the items came from, he testified that he did not know.

### The Board's Findings and Decision

A.  The Charge.

The Board noted that there was no dispute that the items were found in DeWitt's car. Additionally, the agency's evidence established that the items were commissary store items.

In determining DeWitt's culpability, the Board gave little weight to his denial for the following reasons. First, his flight when confronted by security indicated a consciousness of guilt on his part. His explanation for his flight, that he had a loaded gun in his car, was unbelievable. The security officers did not find a gun in his car after a thorough search. Although DeWitt testified that the gun was still in his console when he finally retrieved his car, the Board did not believe that the officers would fail to note it in their reports. Thus, the Board found that his flight was circumstantial evidence of his guilt. The Board further found that his credibility was significantly diminished by his obviously fabricated explanation for his flight.

Second, the Board found it totally incredible that he had no plausible explanation for how the items found their way into his car. The Board also found that the fact the items were found in his car was persuasive evidence that he put them there. The Board considered all that evidence and the conflicting statements DeWitt made and found that it was more likely true than

untrue that DeWitt took the items. The Board thus sustained the charge.

B.  The Penalty.

The Board found the following factors relevant to the selection of a penalty: (1) DeWitt's length of service and past work record; (2) the nature and seriousness of the offense; (3) the fact that DeWitt's conduct was intentional; and (4) the special position of trust occupied by DeWitt as a store worker.

Although DeWitt had worked at the agency for over thirteen years, the Board found that the agency's removal penalty was neither arbitrary nor unreasonable under the circumstances. Further, based on *Jones v. Department of the Navy*, 83 FMSR ¶ 5009 (MSPB 1983), this misconduct was serious enough to warrant removal for the first offense even though no prior disciplinary record was cited by the agency. Finally, the Board found no reasons for mitigation sufficient to disturb the agency's decision.

## OPINION

DeWitt asserts (1) that the Board erred in concluding that his flight established guilt; and (2) that the penalty imposed was so disproportionately harsh that it was an abuse of discretion.

This court's scope of review is limited by 5 U.S.C. § 7703(c). We affirm a decision to dismiss a federal employee if the "decision complies with the applicable statute and regulations and [if] it has a rational basis supported by substantial evidence from the record taken as a whole." *Hayes v. Department of the Navy*, 727 F.2d 1535, 1537 (Fed.Cir.1984).

## I

There is no dispute that the items were found in DeWitt's car and he does not contest the Board's finding that those items, some still partially frozen, came from the commissary. Rather, he disputes the Board's conclusion of "unauthorized possession." He argues essentially that he was not the one who took the items out of the commissary and put them in his car, that the agency failed to prove the element of intent, and that the Board improperly considered his flight as evidence of guilt.

In criminal cases it is well settled that flight can be probative evidence of guilt. *Allen v. United States*, 164 U.S. 492, 499, 17 S.Ct. 154, 156, 41 L.Ed. 528 (1896); *United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir.1982); *United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir.1977). In administrative cases circumstantial evidence can be used to prove the elements of a charge, including the element of intent. *See Schapansky v. Department of Transportation, FAA*, 735 F.2d 477, 483 (Fed.Cir.1984), *petition for cert. filed*, 53 U.S.L.W. 3160 (U.S. Aug. 16, 1984) (No.84-258). Whether flight alone would be sufficient circumstantial evidence in an administrative proceeding is a question not before us because the Board considered other factors. In light of the location of the items, DeWitt's conflicting statements, and his lack of a plausible explanation, the Board concluded that the charge was "more likely true than untrue." We have carefully reviewed the record and the briefs and we are persuaded that even without considering DeWitt's flight the Board's decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support [its] conclusion." *Brewer v. United States Postal Service*, 647 F.2d 1093, 1096, 227 Ct.Cl. 276 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)), *cert. denied*, 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). Therefore, the Board did not err in sustaining the agency's charge.

## II

DeWitt argues that the penalty of removal was so harsh and disproportionate to an offense of unauthorized possession of approximately fourteen dollars worth of groceries that it was an abuse of discretion. Under the facts of this case, we disagree.

The choice of penalty for employee misconduct is left to the agency's sound

discretion. *Miguel v. Department of the Army,* 727 F.2d 1081, 1083 (Fed.Cir.1984). This court will not disturb the agency's choice unless the severity of its action appears totally unwarranted in light of the relevant factors. *Brewer,* 647 F.2d at 1098. Though the penalty here was severe, we cannot say it was totally unwarranted in light of all the facts because the record reflects a reasoned concern for the factors appropriate to evaluating a penalty. While this case differs from *Miguel* in several key aspects, it is the responsible exercise of discretion that is the fundamentally distinguishing feature.

■ As this court stated in *Miguel,* "Whether in a given case the penalty imposed by the agency amounts to an abuse of discretion depends upon the unique circumstances of each case." 727 F.2d at 1083.

In *Miguel,* the agency abused its discretion because it did not base its decision on the unique circumstances of the case. Instead, there was "little recognition" of those circumstances apparently because "it was the policy of the deciding official to impose the maximum penalty for all thefts regardless of the agency guidelines." 727 F.2d at 1084 n. 1. Similarly, in *Ross v. United States,* 229 Ct.Cl. 755 (1982), the employee alleged an agency policy of "dismissal for any employee found to have converted government property, no matter what the surrounding circumstances." 229 Ct.Cl. at 757. The court observed that the employee alleged facts indicating that the agency selected his penalty based on that policy and not based on "an objective evaluation of the circumstances surrounding his offense." *Id.* at 759.

■ It is this refusal to consider the peculiar facts of the case that is the essence of the abuse. In DeWitt's case, however, there is no abuse because the penalty was based on a responsible balancing of the factors outlined in *Douglas v. Veterans Administration,* 5 MSPB 313 (1981).

On a factual level, this case is distinct from *Miguel* in three significant factors. First is the control factor. DeWitt's job duties involved stocking the commissary shelves. Thus, he occupied a position of control and custody over the items he took. In *Miguel,* on the other hand, the employee was a commissary cashier who was in a position of control with respect to the cash in the register, but not with respect to the items she took from a cabinet in the manager's office.

In evaluating the agency's choice of penalty, it was not inappropriate for the Board to consider this control factor. In two recent unauthorized possession cases where the employee was in a position of trust, the penalty of removal was upheld. *Book v. United States Postal Service,* 675 F.2d 158 (8th Cir.1982) (demonstrated lack of trustworthiness was directly connected to employee's job performance and position); *Jones v. Department of the Navy,* 83 FMSR ¶ 5009 (MSPB 1983) (removal an appropriate penalty since the employee's honesty and integrity were important to the agency in view of the position of trust he occupied in the care and control of the items he was charged with stealing).

It is not just the dollar amount of the theft but the attitude of the employee that matters. Where an employee takes unauthorized personal possession of property entrusted to his care and responsibility the breach of trust is difficult to repair. Nevertheless, the agency does not assert and we do not hold that every store worker who takes unauthorized possession of property over which he exerts control and custody must be removed. *See Brewer,* 647 F.2d at 1098 (*dictum*).

Second is the guideline factor. In *Miguel,* that agency's table of penalties stated that the choice of penalty "will be determined primarily by value of articles stolen." 727 F.2d at 1084. Here, however, there was no such restriction on discretion. The agency's guideline here authorizes a penalty outside the general range depending on the circumstances.

Contrition is the third factor. In *Miguel,* when that agency accused the employee of theft she replied in effect, "I have done a bad thing, I should not have done it." 727 F.2d at 1082. Here, however, when the

agency informed DeWitt that he was suspected of stealing government property, he denied any wrongdoing. Subsequently, he deceived investigating officers and gave testimony at the hearing which the Board found was "obviously fabricated."

"The fifth amendment privilege against compulsory self-incrimination may be asserted in an administrative investigation to protect against any disclosures that an individual reasonably believes could be used in his own criminal prosecution ...." *Weston v. Department of Housing and Urban Development*, 724 F.2d 943, 947–48 (Fed.Cir.1983) (citing *Kastigar v. United States*, 406 U.S. 441, 444–45, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972)). But instead of asserting a fifth amendment privilege, DeWitt misled investigators and gave false testimony at the hearing. It was not improper for the Board to consider these facts when it evaluated the agency's choice of penalty.

We have thoroughly analyzed the matters before us; we cannot say that the decision to remove DeWitt was arbitrary, capricious, or unsupported by substantial evidence. Finding no error of law and no abuse of discretion, we affirm.

*AFFIRMED.*