60 F.3d 843
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Early W. SKATES, Petitioner,
v.
DEPARTMENT OF the ARMY, Respondent.
 No. 95-3234.
 United States Court of Appeals, Federal Circuit.
 June 28, 1995.
 
 Before RICH, Circuit Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.
 DECISION
 SKELTON, Senior Circuit Judge.
 
 
 1
 Early W. Skates, pro se, appeals the decision of the Merit Systems Protection Board (board) in Docket No. NY-0752-94-0293-I-1, removing him from his position of cook at the United States Military Academy at West Point, New York, which is a part of the Department of the Army (agency), for theft of food. We affirm in part and vacate in part and remand.
 
 DISCUSSION
 
 2
 Skates was a cook, WG-08. His job was to prepare and cook food along with other cooks for the 4200 cadets at the Academy. Actually, he had two separate jobs. He worked as a cook from 3:30 a.m. to 11:45 a.m. as a cook in the Cadet Mess and worked in the PX at the end of his cook shift duties. On August 30, 1993, sometime before 1:00 p.m., he was observed in the PX eating food that he had brought from the Cadet Mess. Also, he was giving some of the food to other PX employees. This was reported to Captain Shields, the proposing official in this case, who called the Military Police (MP) to investigate. The MP found that Skates had two plastic bags, one containing chicken fajita mix and the other containing Spanish rice, and also a bag with remnants of flour tortillas. Captain Shields identified this food as coming from the Cadet Mess. When questioned, Skates admitted he had taken the food from the Cadet Mess but said he did not know it was wrong to do so. The MP filed a charge against him in the United States District Court for the Southern District of New York, for "Theft of Public Property". However, this charge was never prosecuted but was dismissed by Martin R. Goldberg, Magistrate Judge, on October 21, 1993.
 
 
 3
 In the meantime, Captain Shields issued a proposal to remove Skates from his job for theft of the fajitas and rice. Skates answered the proposal by saying that he thought the items were garbage and that he retrieved them in a plastic container as they were being thrown by another worker into a garbage bag. Nevertheless, the agency sustained the charge and removed Skates from his position of cook, effective March 18, 1994. He appealed to the board and requested a hearing. The matter was referred to an administrative judge (AJ) who held a hearing at which Skates appeared and gave testimony.
 
 
 4
 At the hearing, Skates testified that he had taken the food from the Cadet Mess because he thought it was garbage and that he did not know it was wrong to take it. However, officers of the Cadet Mess testified that the food was not garbage but leftovers which were saved and stored and which were to be served later at buffets. They also testified that cooks and other employees were repeatedly warned not to take food outside the Cadet Mess, and that notices to that effect were posted in the building. At the conclusion of the hearing, the AJ ruled that the agency had proven its charge by a preponderance of the evidence, and that the charge of theft of government property was sustained. He also held that the government had shown that there was a nexus between the misconduct of Skates and the efficiency of the federal service, and that his theft of food interfered with the efficiency of that service.
 
 
 5
 The AJ next considered the reasonableness of the penalty of removal. In this regard, he considered his estimate of the value of the food involved, Skates' position as a WG-08 senior cook, mitigating factors, and the proven facts in the case. After this analysis, he concluded that removal was a reasonable penalty, and entered an order affirming Skates' removal by the agency. Skates filed a petition for review with the full board which was denied by a majority of the board. Chairman Ben L. Erdreich filed a dissenting opinion with respect to the penalty of removal, saying that he would mitigate the penalty to a 60-day suspension. The initial opinion of the AJ became the opinion of the board on its approval by the majority. Skates now appeals to this court.
 
 
 6
 The only issue in this appeal is whether the penalty of removal was so harsh under the facts and the applicable law that it constituted an abuse of discretion by the agency and the board. Chairman Erdreich stated unequivocally in his dissent that "the agency has abused its discretion in removing Mr. Skates". We agree. The facts show that Skates had worked for the Military Academy for 17 years, 10 of which was in working as a cook. During all of these years there was only one disciplinary action taken against him when he was given a one-day suspension for being involved in 1988 in a shoving incident with another employee who tried to push him into a hot stove. Skates only tried to defend himself. The board chairman pointed out in his dissent that on that occasion Skates was the "victim and was provoked". He also noted that this incident took place in 1988, over five years before the incident involved here, and that this significantly diminished the weight of the prior discipline in the determination of the proper penalty in the instant case. Notwithstanding these exculpatory facts, the agency considered the prior one-day suspension as an important factor in approving the removal penalty. In fact, LTC Cole, the removal official, testified, as shown in the AJ's opinion, that in deciding to remove Skates he was influenced by his prior one-day suspension for fighting in 1988. We agree with the chairman. In our opinion this single remote incident of questionable conduct on the part of Skates, occurring as it did, should have been given little, if any, weight by the AJ in considering the removal penalty.
 
 
 7
 The agency's table of penalties provides a range of penalties from a 14-day suspension to removal from office for stealing. It also states that "penalty depends on such factors as the value of property involved, and the nature of the position held by an offending employee which may dictate a higher standard of conduct". In this case the AJ found that the value of the food taken by Skates was de minimis. He also found that the exact value had not been proven, but stated that Skates "seems to have stolen food worth about twenty (20) dollars". However, in Skates' petition for review he stated that the food was worth about $2.60 and that the United States Magistrate who dismissed the criminal charge against him said it was worth about $.17 (cents). Regardless of which of these values is correct, it is de minimis in amount. We have held that the de minimis value of stolen items is a factor to be considered in a penalty determination. Miguel v. Dept. of Army, 727 F.2d 1081 (Fed. Cir. 1984). In that case an employee was charged with taking two bars of soap over which he had no control. The soap was worth $2.10. We held that the removal of the employee was a penalty grossly disproportionate to the offense and thus was an abuse of discretion.
 
 
 8
 The AJ reasoned that the de minimis value of the food was counterbalanced by the fact that Skates was in control of the food which he cooked. To support this theory he cites DeWitt v. Dept. of Navy, 747 F.2d 1442 (Fed. Cir. 1984) where we sustained the removal of an employee for stealing groceries worth 14 dollars which were under his control. The AJ reasoned further in the instant case that the control factor in DeWitt, and in the instant case, placed the employees in a trust position with regard to the stolen items, and that the violation of this trust outweighed the de minimis value of the stolen articles. The board chairman answered this argument in his dissent by saying that the position of Skates is more like the position of the employee in Miguel than the one in DeWitt because "there is nothing in the record to support that Mr. Skates had dominion over these particular food stuffs that he took from the mess hall". We agree with the chairman. While it is true that Skates had control over the food while he was cooking it, this control ended when the cooking was finished. At the time Skates appropriated the food it had been served to the cadets and was leftovers being saved by those in charge of the mess hall who had control and custody of it for the purpose of serving it later at a buffet.
 
 
 9
 There are other mitigating facts in the case. The evidence shows that Skates was an honorably discharged veteran of the Vietnam war and that for his service in that war the Army awarded him the National Defense Service Medal and the Vietnam Service Medal. As a 17-year civilian employee at the West Point Academy, he received ratings that were exceptional and fully successful and highly successful. He also received a $400 award for sustained superior performance. Finally, a letter of commendation Skates received from his supervisor Manuel D. Mendes on March 16, 1993, should be mentioned. In that letter Mendes described how Skates walked through the snow from the village of Highland Falls to West Point during the blizzard in March 1993, when all roads were closed to traffic and most employees were absent, to prepare meals during a two-day period for the 1000 cadets who were at the Academy. On that occasion he did a double tour of duty because of the absence of other employees. Mendes was high in his praise of Skates for his assistance, dedication, and professionalism. He concluded the letter by saying, "It is people such as yourself that makes the Cadet Mess, Food Prep Unit, a fine place to work. I am most proud to be associated with you. I wish you continued success in the future." (emphasis supplied). The AJ did not indicate that he considered this account of exceptional devotion to duty or the $400 award for sustained superior performance in mitigation of the penalty.
 
 
 10
 After carefully reviewing the evidence, the briefs and the applicable law, we conclude that the removal penalty was too harsh and severe and was grossly disproportionate to the offense charged, and was an abuse of discretion.
 
 
 11
 Accordingly, we affirm that portion of the board's opinion holding that Skates was guilty of stealing the food, but vacate that part of the opinion that imposes a removal penalty, and remand the case to the board for a determination of a penalty less than removal.