# United States Court of Appeals for the Federal Circuit

---

**THYRMAN F. SMILEY,**
*Petitioner,*

v.

**DEPARTMENT OF DEFENSE,**
*Respondent.*

---

2010-3039

---

Petition for review of the Merit Systems Protection Board in PH0752090312-I-1.

---

Decided: October 12, 2010

---

KEITH E. KENDALL, Keith Kendall, P.C., of Harrisburg, Pennsylvania, for petitioner.

P. DAVIS OLIVER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. On the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, BRIAN M. SIMKIN, Assistant Director, and SAMEER P. YERAWADEKAR, Senior Trial Counsel. Of counsel on the brief was ZLATKO JURISIC, Defense Distri-

bution Center, Defense Logistics Agency, of New Cumberland, Pennsylvania.

_____

Before LINN, CLEVENGER, and PROST, *Circuit Judges.*

PER CURIAM.

Thyrman F. Smiley seeks review of the final decision of the Merit Systems Protection Board ("Board") sustaining his removal from the position of Supervisory Supply Technician at the Defense Logistics Agency's New Cumberland, Pennsylvania facility. *Smiley v. Dep't of Defense*, Docket No. PH0752090312-I-1 (Sept. 23, 2009). We affirm.

I

The Defense Logistics Agency ("agency") removed Mr. Smiley as a result of two charges against him: conduct unbecoming a supervisor and conduct unbecoming a work leader. The conduct in question involved assertions by female employees at his work facility that he had inappropriate uninvited physical contact with them and that he had, over a course of time, made numerous sexual comments referring to the physical assets of the women and revealing Mr. Smiley's considerable sexual appetite and his desire to share that appetite with the women. The charges were triggered by a co-worker observing Mr. Smiley rubbing the shoulders of one of the women on August 7, 2008 and reporting the incident to the authorities. An investigation ensued.

The investigation unearthed detailed recollections from the women in question recounting the occasions on which Mr. Smiley had made unwanted physical contact or directed sexual comments to them. Many of Mr. Smiley's

co-workers gave statements saying that they had never heard Mr. Smiley make any sexual statements. Other co-workers, however, gave statements saying that Mr. Smiley had participated in "locker room" talk with male employees. Such talk made sexually explicit references to fellow female workers. Mr. Smiley steadfastly denied ever having made any explicit sexually oriented comments, although he did admit that he had engaged in "locker room" talk with fellow male employees.

Satisfied that Mr. Smiley's conduct proved the two charges, the agency's deciding official conducted a thorough *Douglas* factors analysis before imposing the penalty of removal. The deciding official gave Mr. Smiley credit for his lack of past discipline and his fully successful previous work performances, citing these as mitigating factors. However, the very serious nature of the charges and the fact that such charges undermine Mr. Smiley's ability to be a supervisor counted against Mr. Smiley. The deciding official recognized that other supervisors in the past had received lesser penalties for similar misconduct, but found the conduct in those cases to be less egregious because Mr. Smiley's conduct here was "serious, repetitive, and involved more than one individual." Other *Douglas* factors did not counsel against removal. Although the deciding official found little potential for rehabilitation in this case, the slim chance of rehabilitation led the deciding official to offer Mr. Smiley a last chance agreement, which he declined on the grounds that the terms were "too onerous." Upon issuance of the agency's removal notice, Mr. Smiley appealed to the Board.

II

The administrative judge ("AJ") assigned to this case held a hearing at which Mr. Smiley and the two affected women testified. As before the agency, Mr. Smiley admitted rubbing the shoulders of one of the women. His explanation of this event was that he lived in Italy for 10 years and "[i]t's a different culture there. They express themselves with their hands a lot and I, I find myself doing it even today." He however denied having other physical contact with either of the women or talking dirty to them. The women stood by the statements they had given to the agency.

The AJ recognized that he thus had a credibility decision to make: whether to believe the women or Mr. Smiley. Under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), several factors guide an administrative judge in deciding which of conflicting testimony to credit. The AJ assessed the testimony of the female witnesses and Mr. Smiley under the *Hillen* factors, and concluded that the women's testimony should be credited. With regard to Mr. Smiley, the AJ "could not believe the appellant's general denials" because "[h]is testimony was neither straight-forward nor candid. Even his own witness acknowledged that he and others made inappropriate comments about females at the worksite." Having credited the extensive testimony of the women and excluded Mr. Smiley's explanations in defense, the AJ concluded that the agency had established by preponderant evidence that Mr. Smiley had committed the charged offenses. Accordingly, the AJ sustained the agency's charges of conduct unbecoming a supervisor and a work leader, and Mr. Smiley's removal for that conduct.

Mr. Smiley sought review from the full Board, which denied his petition, thereby making the decision of the AJ the final decision of the Board. Mr. Smiley timely sought review in this court.

## III

The scope of our review authority over a final decision of the Board is limited by statute. We must affirm the Board's final decision unless we determine that it is arbitrary, capricious, an abuse of discretion or otherwise contrary to law. 5 U.S.C. § 7703(c). We review matters of law without deference, and matters of fact to determine if substantial evidence supports the Board's findings. The Board's credibility determinations are "virtually unreviewable" on appeal. *Chambers v. Dep't of the Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008). Whether the Board appropriately used the *Hillen* factors to guide its credibility decisions may be reviewed in a given case to determine if the Board deviated so far from those factors as to undermine our confidence in its credibility decisions. The penalty to be imposed for employee misconduct is left to the sound discretion of the agency and accordingly is reviewed by this court under the abuse of discretion standard. *Miguel v. Dep't of the Army*, 727 F.2d 1081, 1083 (Fed. Cir. 1984).

## IV

Mr. Smiley raises three challenges to the Board's final decision. First, he questions the Board's credibility decision to favor the women over himself. He further contends that the Board misapplied the *Hillen* factors by giving undue weight to the testimony of the women and by unduly discounting the evidence provided by other co-workers who stated that they had never seen Mr. Smiley

engage in inappropriate contact, nor heard him make any inappropriate statements.

Second, Mr. Smiley argues that the procedures used to remove him violated law because the offenses with which he was charged do not appear in the agency's Table of Offenses and Penalties ("Table"). Because Mr. Smiley did not present this argument to the Board, he has waived it for consideration by this court. *Synan v. Merit Sys. Prot. Bd.*, 765 F.2d 1099, 1101 (Fed. Cir. 1985). Even if not waived, the argument lacks merit, as the agency is not restricted to the offenses listed in the Table, which is only a suggested guide. The Table does suggest removal for first offenses of "indecent conduct on government premises during work hours" and for "sexual harassment," both of which are similar to Mr. Smiley's conduct. Mr. Smiley was fully aware of the nature of the charges against him and the fact that engaging in such conduct surely is adverse to the agency's mission. As the agency notes in its brief, "the notion that Mr. Smiley could make repeated sexual comments, offer promotions and money for sex, and grab female employees' breasts without being removed is hard to fathom."

Third, Mr. Smiley argues that the agency misapplied the *Douglas* factors in deciding that removal is appropriate in his case.

With regard to Mr. Smiley's first challenge, he essentially asks this court to reweigh the evidence on the question of whether he committed the charged offenses. In his favor, he points to the evidence given by individuals who never saw or heard Mr. Smiley do anything wrong. In his brief, he paints himself as a "charismatic, likeable, hard working, harmlessly amorous" person. He asserts that the agency "coerce[ed] other employees to paint

Appellant as the monster that he is not."   The testimony of the women involved, however, belies his claim to being harmlessly amorous, and the record is devoid of evidence to support a charge that the agency coerced anyone to testify against him.   In short, our review of the record demonstrates that substantial evidence supports the Board's decision sustaining Mr. Smiley's removal.   His first challenge, like his second, is rejected.

Mr. Smiley's third argument hinges upon his assertion that the agency conducted a "cherry picking" exercise when it applied the *Douglas* factors in this case, by emphasizing the factors adverse to Mr. Smiley and discounting the factors favorable to him.   For example, Mr. Smiley claims he should have been given credit for an "unusual" mitigating circumstance, which was the fact that he had lived and worked for 10 years in Italy, where it was customary for people to be "touchy/feely" with each other.

This argument lacks merit.   The record is clear that the deciding official considered each of the pertinent *Douglas* factors, and, where appropriate, gave Mr. Smiley mitigating credit.   At the end of the day, the deciding official concluded that the nature of the offenses, his lack of trust in Mr. Smiley's ability to act as a supervisor, and Mr. Smiley's slim chance for rehabilitation counseled in favor of removal as the appropriate penalty.   When the severity of a penalty is "totally unwarranted," the Board abuses its discretion by affirming the agency's penalty — as was the case in *Miguel*, where an employee was removed for theft of two bars of soap.   727 F.2d at 1084. This is an altogether different case.   Here, a supervisor is proven to have engaged in wholly inappropriate conduct which undermines his trustworthiness and ability to perform the duties required by his position.   Whether a

penalty is an abuse of discretion "depends on the unique circumstances of each case." *Miguel*, 727 F.2d at 1083. In the circumstances of this case, the penalty of removal is not an abuse of discretion.

For the foregoing reasons, we affirm the final decision of the Board.

COSTS

No costs.

**AFFIRMED**