NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JOHN BURKS,**
*Petitioner,*

v.

**RAILROAD RETIREMENT BOARD,**
*Respondent.*

---

2011-3196

---

Petition for review of the Merit Systems Protection Board in case no. CH0752100197-I-1.

---

Decided: June 12, 2012

---

JOHN BURKS, of Gladstone, Missouri, pro se.

DOUGLAS T. HOFFMAN, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director.

---

Before LOURIE, DYK, and WALLACH, *Circuit Judges*.

PER CURIAM.

John Burks ("Burks") petitions for review of a decision of the Merit Systems Protection Board ("Board"), which affirmed a decision of the Railroad Retirement Board ("the agency") to remove Burks from his position. *Burks v. R.R. Ret. Bd.*, No. CH-0752-10-0197-I-1 (M.S.P.B. June 2, 2011) ("*Final Order*"); *Burks v. R.R. Ret. Bd.*, No. CH-0752-10-0197-I-1 (M.S.P.B. July 23, 2010) ("*Initial Decision*"). We *affirm*.

BACKGROUND

Burks was employed by the agency as an Information Technology Specialist. The agency removed Burks based on two charges: (1) failure to follow supervisory instructions and (2) making an unauthorized configuration change to the data communication network.

The first charge was based on an incident on May 29, 2009. Burks's supervisor had sent an e-mail to Burks and three co-workers on May 28 asking about user-reported network problems. On Friday, May 29, while off-duty, Burks sent two e-mails in response, suggesting that he might be able to fix the problem. His supervisor replied:

John,

We are trying to resolve this situation as soon as possible. The core and firewall passwords are not in the envelope [where Burks had been instructed to leave them]. Please call Roger [one of Burks's co-workers] with the access information. Roger's number is . . . .

Resp't's App. 88. Burks responded to say that he had already made a change, that he was in court, and that "[t]his will have to wait until Monday [June 1] if it is not

already resolved." *Id.* Burks did not follow his supervisor's instruction to call his co-worker with the access information.

The second charge was based on an incident on June 15, 2009, and was related to the agency's transition from Sprint to a new internet service provider ("ISP"), Qwest. The first attempt to transition, on May 22, was canceled by Burks. After two meetings of agency engineers, including a conference call involving Qwest engineers, Burks's supervisor approved a plan to transition both e-mail and internet service at the same time on June 12. Burks repeatedly objected to this plan, and on June 11, he told his supervisor that he would only move the e-mail services to the new ISP on June 12. After a long discussion, Burks agreed to migrate both e-mail and internet, and he successfully led this transition to Qwest on Friday, June 12. On Monday, June 15, Burks e-mailed a co-worker to say that he was going to change the system back to Sprint, and the co-worker responded: "Please don't do that. We should leave everything on Qwest . . . . Everything is working now." *Id.* 109. Nevertheless, Burks changed some or all of the network back to Sprint, causing a number of network problems for agency employees.

Based on these charges, the agency removed Burks, effective November 20, 2009. The removal notice stated that the deciding official considered Burks's high ratings and lack of disciplinary record, but that the "seriousness of [his] misconduct on June 15, 2009," and "failure to even recognize the problem with [his] behavior" made removal appropriate. *Id.* at 137-38. In a later affidavit for the Board, the deciding official confirmed that "[t]he second charge is the most serious and [he] would have sustained the proposal to remove based on the charge related to his June 15, 2009 actions alone." *Id.* at 192.

Burks appealed his removal to the Board, challenging both charges and alleging discrimination, procedural errors, and reprisal under 5 U.S.C. § 2302(b)(9). Burks withdrew his initial request for a hearing, and the case was decided on the written record. The administrative judge ("AJ") found that the agency had proven both charges by a preponderance of the evidence. The AJ also found that Burks had failed to carry his burden of proving his discrimination and reprisal claims, and that the agency had not committed harmful procedural error. Finally, the AJ concluded that the agency adequately considered the *Douglas* factors and properly exercised its discretion in selecting the penalty of removal. *See Initial Decision*, slip op. at 24-26 (citing *Douglas v. Veterans Admin.*, 5 M.S.P.R. 280 (1981)). The full Board declined to review the AJ's decision, which thus became the final decision of the Board. *Final Order*, slip op. at 7.

The Board's Final Order informed Burks that he could appeal the Board's decision within 30 days of receipt to the Equal Employment Opportunity Commission ("EEOC") or a U.S. district court, or alternatively, if he did not want review of his discrimination claims, that he could appeal the decision within 60 days of receipt to this court. *Id.* at 7-8. Burks timely appealed to this court.

DISCUSSION

I

Before reaching the merits of this appeal, we first address the agency's argument that we lack jurisdiction because Burks first filed a petition with the EEOC. In general, we have jurisdiction over appeals from final orders of the Board under 28 U.S.C. § 1295(a)(9). In a "mixed case" such as Burks's, in which it is alleged that a personnel action at issue before the MSPB is based on

prohibited discrimination, the Board's decision is "judicially reviewable" as of

>    (A) the date of issuance of the decision if the employee or applicant does not file a petition with the [EEOC] under subsection (b)(1) of this section, or

>    (B) the date the [EEOC] determines not to consider the decision under subsection (b)(2) of this section.

5 U.S.C. § 7702(a)(3). Subsection (b)(1) states that an employee may petition the EEOC "within 30 days after notice of the decision of the Board," and subsection (b)(2) states that the EEOC "shall, within 30 days after the date of the petition, determine whether to consider the decision." *Id.* § 7702(b)(1)-(2).

The Board's final order issued on June 2, 2011, and was apparently received by Burks shortly thereafter. On July 26, 2011, after the 30-day deadline of subsection (b)(1), the EEOC received a petition for review from Burks, which included a handwritten note asking the petition to be accepted as timely because he had sent two earlier petitions to the wrong address. Both parties agree that the petition was untimely. On July 27, 2011, a separate petition for review was received and filed by this court. Burks's EEOC appeal was closed, in response to his requests, on October 6, 2011. The agency argues that as of July 27, when Burks filed his Federal Circuit appeal, his case was not "judicially reviewable" under 5 U.S.C. § 7702(a)(3) because Burks had filed a petition with the EEOC, and the EEOC had not "determine[d] not to consider the decision."

We disagree. An EEOC petition would bar judicial review only if the employee "file[s] a petition . . . under

subsection (b)(1)," and subsection (b)(1) states that a petition may be filed "within 30 days." *Id.* § 7702(a)(3)(A), (b)(1). In *Cloer v. Secretary of Health and Human Services*, 675 F.3d 1358, 1361 (Fed. Cir. 2012) (en banc), we recently held that an untimely petition may be "a petition filed under" a statutory provision where that provision is silent on timeliness. Here, however, we reach the opposite conclusion. Because subsection (b)(1) explicitly specifies a 30-day time limit, an employee only "file[s] a petition with the [EEOC] under subsection (b)(1)" if that petition is filed "within 30 days after notice of the decision of the Board." 5 U.S.C. § 7702(a)(3)(A), (b)(1).

Because both parties agree that Burks's petition to the EEOC was not filed within 30 days of his notice of the Board decision, we conclude that Burks's appeal in this court is "judicially reviewable" under 5 U.S.C. § 7702(a)(3), and that we have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II

Turning to the merits, our review of final Board decisions is limited. Under 5 U.S.C. § 7703(c), we may only set aside agency actions, findings, or conclusions of law found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."

Regarding the first charge, Burks concedes that he received and failed to follow his supervisor's instructions on May 29, 2009, but argues that he had no obligation to follow instructions while off duty (relying on *U.S. Department of the Navy v. Federal Labor Relations Authority*, 962 F.2d 1066, 1068 (D.C. Cir. 1992)) and that he could not have called his co-worker because he was filing

a pleading in a federal courthouse. We need not decide whether this charge was properly sustained or whether this minor offense would justify Burks's removal because the deciding official stated that the second charge was the most serious, warranting removal for a first offense, and that he would have removed Burks for the second charge alone. *See Guise v. Dep't of Justice*, 330 F.3d 1376, 1381 (Fed. Cir. 2003) ("[W]hen there is no indication that the agency would have adopted a different penalty in the absence of the unsustained charge, we have upheld the penalty without the need for a remand.").

The second charge was making an unauthorized configuration change to the data communication network on June 15, 2009. Burks concedes that he made this network change, but he argues that it was not unauthorized because it was technically necessary and that he was authorized to take appropriate measures to deal with such technical problems. The Board rejected this argument, finding that Burks was aware of how his supervisor wanted to handle the ISP transition, that the transition was successful, and that Burks then made an unnecessary change back to Sprint that he knew was contrary to his supervisor's instructions. Burks further argues that other employees made network changes that were not specifically authorized but were nonetheless condoned, but the Board found that he had not provided any examples comparable to his situation. Burks challenges these findings, but we review the Board's factual findings for substantial evidence, which means that "[w]e do not substitute our judgment for that of the [B]oard as to the weight of the evidence or the inferences to be drawn therefrom." *Cross v. Dep't of Transp.*, 127 F.3d 1443, 1448 (Fed. Cir. 1997). We conclude that substantial evidence supports the Board's finding that Burks made an unau-

thorized configuration change to the data communication network.

Burks makes no showing that removal is an unreasonable penalty for the second charge. In general, "the penalty for employee misconduct is left to the agency's discretion," and this court's review "is highly deferential." *Webster v. Dep't of the Army*, 911 F.2d 679, 685 (Fed. Cir. 1990). "While . . . the penalty must be reasonable in light of the sustained charges, . . . reasonable in this context . . . mean[s] merely that the agency's choice of penalty not be 'grossly disproportionate to the offense . . . .'" *Id.* at 686 (quoting *Miguel v. Dep't of the Army*, 727 F.2d 1081, 1083 (Fed. Cir. 1984)). The deciding official considered the *Douglas* factors, including "the seriousness of [Burks's] misconduct on June 15, 2009," "the jeopardy in which [his] actions placed [the agency's] data communications system," his work record, his "failure to even recognize the problem . . . [which] raises serious doubts about any potential for rehabilitation," and the inadequacy of lesser penalties. Resp't's App. 137-38; *see Douglas*, 5 M.S.P.R. 280. We find no error in the Board's conclusion that the agency adequately considered the *Douglas* factors and properly exercised its discretion in selecting the penalty of removal.

We have considered Burks's remaining arguments and find them to be without merit.

COSTS

No costs.