DYK, Circuit Judge,
dissenting.
The majority affirms a decision of the Merit Systems Protection Board (“Board”) sustaining the Department of Health and Human Service’s (the “agency”) removal of Dr. Jaime Gumbs from his position as a medical officer at the Indian Health Service, Pawnee Health Center, in Oklahoma, for allowing his medical license to lapse and treating one or two patients after the license had lapsed. I respectfully dissent.
I
The agency and the Board viewed Dr. Gumbs’ allowing his medical license to lapse and treating one or two patients as a serious matter. The agency’s deciding official relied on a finding that “practicing medicine without a license is illegal in all states,” J.A. 82, and a “violation of laws regulating licensure requirements,” J.A. 86. The deciding official further found that Dr. Gumbs’ conduct exposed the agency to “potential liability issues,” J.A. 85. The Board’s initial decision relied on the agency’s finding that Dr. Gumbs’ conduct was “a violation of law.” J.A. 22. And the full Board affirmed, finding that removal was reasonable under the circumstances in part because of “the seriousness of the charge of practicing medicine without a license and the fact that the appellant’s actions exposed the agency to liability.” J.A. 6.
It is far from clear that, as the Board assumed, Dr.. Gumbs’ license had in fact lapsed. Dr. Gumbs applied to renew his medical license no later than April 22, 2013, prior to its expiration on May 7, 2013, and submitted a $150.00 fee. If the proper amount had been submitted, it appears that the license would have been extended automatically. Under both Oklahoma (where all of the conduct at issue occurred) and Puerto Rico (where Dr. Gumbs was licensed to practice medicine) *953 law, it appears that the filing of a timely renewal application extends the license term. Oklahoma Stat. tit. 75, § 314(B) provides:
Except as otherwise prohibited by law, if a licensee has made timely and sufficient application for renewal of a license or a neio license with reference to any transfer of an activity of a continuing nature, the existing license does not expire until the application has been finally determined by the agency.
Id. (emphasis added). Under Puerto Rico law, the Medical Discipline and Licensure Board “may suspend the license of any physician ... who does not submit the information required for the register every three years, for the term it deems convenient, contingent upon the facts involved in each case.” P.R. Laws Ann. Tit. 20, § 134(c) (emphasis added). But “once the person meets the requirement of submitting such information, his/her license shall be activated by the Board.” Id. Thus, it appears that under Puerto Rico law, even when a physician fails to timely renew a medical license, it is likely that the license does not automatically terminate.
According to Dr. Gumbs’ May 27, 2013, letter to the deciding official regarding the notice of proposed removal, he “sent the required application and documents with the money that was asked for on the web site well in advance of any deadline for renewal.” J.A. 95. Dr. Gumbs also acknowledged that he “later found out” that the licensing authority “wanted another $100.00,” so he sent the remaining $100 on May 15th, 2013. Id.
The government argues on appeal, and the majority agrees, that the failure to make the additional $100 payment resulted in the lapse of his license. But it is not clear under either Oklahoma or Puerto Rico law that the failure to make the full payment caused the license to lapse since the application was otherwise complete. This is a matter for the Board in the first instance, and the Board did not address the issue. In my view, the majority errs by deciding the issue without a remand.
Even if we could properly assume that Dr. Gumbs’ license lapsed because he failed to timely submit $100 of the license renewal fee, the Board’s action in sustaining the penalty of removal would have been arbitrary and capricious.
First, it is unclear whether either Oklahoma or Puerto Rico law would have regarded Dr. Gumbs’ continuing to practice as criminal, or even particularly serious. Here, neither the agency nor the Board cited any criminal statute or regulation that Dr. Gumbs violated. Instead, the agency relied on its conclusory assumption that Dr. Gumbs’ conduct was “illegal in all states,” J.A. 82, but did not even attempt to analyze his conduct under Oklahoma or Puerto Rico law, where his conduct may not have constituted a criminal violation. We have held that where an agency removes an employee based on a finding that conduct was criminal, but the conduct may or may not have been criminal, a remand is required. See Doe v. Dep’t of Justice, 565 F.3d 1375,1383 (Fed. Cir.2009) (reversing and remanding “[bjecause it seems probable that Doe was disciplined at least in part because the deciding official mistakenly believed that his misconduct was in violation of the law”). Under Doe, therefore, since part of the basis for Dr. Gumbs’ removal was the agency’s potentially mistaken belief that his conduct was criminal, a remand for consideration of a lesser penalty is required.
Second, even if the Board properly assumed that Dr. Gumbs’ actions were technically illegal, the penalty of removal was still arbitrary and capricious, particularly since Dr. Gumbs may have assumed that *954 his license renewal was complete.[1] It is true that-we “defer[] to the agency’s choice of penalty unless the penalty exceeds the range of permissible punishment specified by statute or regulation, or unless the penalty is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion.” Archuleta v. Hopper, 786 F.3d 1340, 1352 (Fed.Cir.2015) (internal quotation marks omitted). But even where all of the agency’s charges are sustained, that deference is not absolute. See, e.g., O’Keefe v. U.S. Postal Serv., 318 F.3d 1310, 1313 (Fed.Cir.2002) (“When all of the agency’s charges are sustained, the agency’s original penalty may nevertheless be mitigated to a maximum reasonable penalty when the agency’s penalty is too severe.”) (citing Lachance v. Devall, 178 F.3d 1246, 1260 (Fed.Cir.1999)). In prior cases, we have reversed agency penalty determinations in similar circumstances where the punishment did not fit the crime, even where the employee’s conduct was unlawful.
In Miguel v. Department of the Army, 727 F.2d 1081 (Fed.Cir.1984), a cashier was removed for “unauthorized possession of U.S. Government property” for admittedly stealing two bars of soap with a total value of $2.10. Id. at 1082. We reversed: “We do not condone theft regardless of the amount involved, but the relatively minor nature of the theft leads us to the conclusion that this harsh discharge of a 24-year employee with an otherwise unblemished record was a penalty grossly disproportionate to the offense and thus was an abuse of discretion.” Id. at 1084; see also Abrigo v. U.S. Postal Serv., No. 883390, 1989 WL 59271, at *1 (Fed.Cir. June 7, 1989) (unpublished) (vacating and remanding removal for misdemeanor unauthorized entry “where the penalty imposed [wa]s so disproportionate as to constitute an abuse of discretion” and “[t]he agency and the [B]oard gave absolutely no consideration to the ... apparently technical nature of the violation”).
Similarly, in VanFossen v. Department of Housing & Urban Development, 748 F.2d 1579 (Fed.Cir.1984), an appraiser (VanFossen) was removed “based on three charges of violating the standards of conduct: engaging in outside employment without authorization; engaging in improper outside employment; and failing to disclose financial interests.” Id. at 1580. VanFossen had more than nineteen years of federal service with no prior disciplinary record. Id. He had previously requested and received approval for outside employment from an area manager, but under applicable regulations this approval was not legally sufficient because it needed to come from the agency’s regional counsel. Id. We vacated and remanded to determine an appropriate lesser penalty. Id. at 1581.
Here, Dr. Gumbs has had nearly twenty-two years of federal service, with no prior disciplinary record. At worst, his medical license lapsed for a period of nine days because he failed to pay $100 of the application fee, despite his “many attempts to get his medical license renewed” prior to the deadline. J.A. 3. And on the morning after his license may have expired, Dr. *955 Gumbs saw a patient or two, whose records were then reviewed by his supervisor.
Our prior cases reflect an important responsibility to remand for determination of a more appropriate penalty in the rare case where the agency’s choice of penalty is grossly disproportionate to the offense. In my view, this is such a case, and I respectfully dissent.

. The majority asserts that Dr. Gumbs was "aware that his license had expired,” Maj. Op. 948, but the record is unclear on this point. According to Dr. Gumbs, he "was expecting that [he] would be receiving the renewal” on May 8, 2013, and did not realize until later that he still owed $100 for the license renewal. J.A. 95; see also Letter from parties at 2, Dkt. No. 72 ("As of [May 8, 2013], despite repeated inquiry Dr. Gumbs had no reason to know that there was anything amiss with his application for renewal”).