NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM T. JONES,**
*Petitioner,*

v.

**ENVIRONMENTAL PROTECTION AGENCY,**
*Respondent.*

---

2012-3167

---

Petition for review of an arbitrator's decision in FMCS No. 11-58940 by Jerome H. Ross.

---

Decided: April 3, 2013

---

WILLIAM T. JONES, of Stone Mountain, Georgia, pro se.

JOSHUA A. MANDLEBAUM, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and STEVEN J. GILLINGHAM, Assistant Director. Of counsel on the brief was KAROL S. BERRIEN, Associate

Regional Counsel, Environmental Protection Agency, of Atlanta, Georgia.

————————————

Before RADER, *Chief Judge,* LOURIE, and WALLACH, *Circuit Judges.*

PER CURIAM

William T. Jones appeals the arbitrator's decision affirming the Environmental Protection Agency's ("EPA" or "the Agency") decision to remove Mr. Jones from his position of Attorney-Advisor, GS-14, with the Region 4 Office of Environmental Accountability. Because the arbitrator's decision is supported by substantial evidence, this court affirms.

## BACKGROUND

Mr. Jones began working as an attorney advisor with the EPA in June 1993. The Office of Inspector General ("OIG") initiated an investigation into Mr. Jones following a complaint from another EPA employee Femi Akindele, whom Mr. Jones had earlier represented in a family matter.[1] There had been a fee dispute between Mr. Akindele and Mr. Jones, in which Mr. Jones, in turn, was represented by another EPA lawyer, Richard Glaze. At some point, Mr. Akindele became concerned that Mr. Glaze had accessed Mr. Akindele's confidential financial disclosure form and improperly relayed its information to Mr. Jones.

———————————

[1] Mr. Jones had been granted authorization to practice law outside his duties as an EPA attorney advisor in the areas of family law, real property, and business law. However, even with such authorization, Mr. Jones was prohibited from using official government time, equipment, and facilities to facilitate his outside law practice.

As part of its investigation into this matter, the OIG examined Mr. Jones's work computer and email database, and discovered messages relating to Mr. Jones's outside practice of law that were sent during EPA work hours and a multitude of inappropriate e-mail messages, some of which attached sexually explicit photographs.

The OIG interviewed Mr. Jones about what it had found. *See* Petitioner's Appendix ("A") 161, 167. In a sworn statement to OIG, Mr. Jones denied practicing family law at the workplace and denied that he had seen Mr. Akindele's financial disclosure form.

On June 21, 2010, the EPA sent Mr. Jones a Notice of Proposed Removal ("NOPR") alleging five charges: (1) lack of candor/misrepresentation of facts; (2) misuse of government property; (3) misuse of official time; (4) improper use of EPA title, address, and phone number; and (5) inappropriate access to confidential information. Following a reply by Mr. Jones, the EPA issued a final action removing Mr. Jones. Mr. Jones's union invoked arbitration to challenge the removal decision. The arbitrator sustained all charges, and affirmed the penalty of removal. *In re Arbitration Between Envtl. Prot. Agency and Am. Fed'n of Gov't Emp.*, FMCS Case No. 11-58940 (June 2, 2012) (Ross, Arb.) ("Arbitrator's Decision"). Mr. Jones timely appealed. This court has jurisdiction pursuant to 5 U.S.C. §§ 7121(f) and 7703.

## DISCUSSION

This court reviews an appeal from an arbitrator's decision under the same standard of review that governs appeals from the Merit Systems Protection Board ("Board"). 5 U.S.C. § 7121(f); *Norris v. Sec. & Exch. Comm'n*, 675 F.3d 1349, 1352–53 (Fed. Cir. 2012). Thus, this court may set aside the arbitrator's decision only to the extent it is found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule

or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703.  The majority of Mr. Jones's contentions on appeal are best interpreted to argue that the arbitrator's findings are unsupported by substantial evidence.[2]   He also argues removal was an improper penalty.

### 1. Substantial Evidence Supports the Arbitrator's Findings That All Five Charges Were Proven By Preponderant Evidence

### A. Charge 1: Lack of Candor/Misrepresentation of Facts

Substantial evidence supports the arbitrator's finding sustaining charge 1, which alleged that Mr. Jones's responses during the OIG investigation lacked candor and/or deliberately represented a material fact. Arbitrator's Decision at 7.  In one of Mr. Jones's sworn statements to the OIG, he stated: "I do not practice family law at my workplace." A.167.  This contradicts record evidence of numerous e-mail messages to and from Mr. Jones during EPA work hours relating to his outside law practice. *See, e.g.*, Supplemental Appendix ("S.A.") 9–20, 27–48, 221–315; *see also* Arbitrator's Decision at 6–7 (discussing the investigation of Mr. Jones's computer, which yielded "a nearly immeasurable volume of materials relating to [Mr. Jones's] outside real estate practice and law business.").  Mr. Jones also stated that he had not "seen" Mr. Akindele's financial disclosure form.  Even if this statement was not a direct misrepresentation, it supports the lack of candor finding because it conflicts

---

[2]    Alongside arguments that certain findings were unsupported by the record, *see, e.g.,* Pet'r's Br. at 8 (arguing charge 2 was "not supported by the record"), Mr. Jones repeatedly states, without explanation, that the arbitrator's decision was "erroneous in that it engage[d] in improper bootstrapping . . . ." Pet'r's Br. at 5; *see also* Pet'r's Br. at 8, 9, 12, 13 (making the same argument).

with the arbitrator's finding in charge 5 that Mr. Glaze had provided Mr. Jones with confidential information from that document. *See Ludlum v. Dep't of Justice*, 278 F.3d 1280, 1284 (Fed. Cir. 2002) (lack of candor is a "broader and more flexible concept" than affirmative misrepresentation, and "may involve a failure to disclose something that, in the circumstances, should have been disclosed in order to make the given statement accurate and complete.").

Mr. Jones argues that the arbitrator improperly considered out of context his sworn statement that he "may have used [his] email less than 5 times to communicate with [Mr. Akindele]" ("the 'five times' statement").[3] A.167; Petitioner's Informal Brief ("Pet'r's Br.") at 3–4. Although the "five times" statement referred only to Mr. Akindele, charge 1 alleged, in part, that Mr. Jones claimed he had used his EPA e-mail only five times for *all* outside clients. A.2. The arbitrator noted this mischaracterization, but nevertheless found that the lack of candor charge was proven by, for example, Mr. Jones's inaccurate statement that he did not do family law at the EPA workplace. A.8. As discussed above, substantial evidence supports this decision. *See LaChance v. Merit Sys. Prot. Bd.*, 147 F.3d 1367, 1371 (Fed. Cir. 1998) (quoting *Burroughs v. Dep't of Army*, 918 F.3d 170, 172 (Fed. Cir. 1990)) ("'[W]here more than one event or factual specification is set out to support a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge.'").

---

[3] Relatedly, Mr. Jones argues he was denied the opportunity to cross-examine the OIG investigators, which he maintains would have shown the "five times" statement referred to Mr. Akindele only. Pet'r's Br. at 6–7. This contention is meritless because the union, acting as Mr. Jones's representative at the time, could have called those investigators as witnesses if it chose.

### B. Charge 2: Misuse of Government Property

The arbitrator found that Mr. Jones engaged in "major misuse of government property" by receiving and sending "a significant volume" of inappropriate and/or sexually explicit material and by engaging in outside legal and real estate work on his government-issued computer. Arbitrator's Decision at 10. Substantial evidence supports this finding, both with respect to Mr. Jones's inappropriate emails, *see, e.g.,* S.A.49–210 (samples of inappropriate e-mail messages), and his outside business, *see, e.g.,* S.A.27–48, 221–315 (samples of emails showing Mr. Jones engaging in outside business on his work computer). Mr. Jones's argument that he was not the initiator of much of the inappropriate e-mail activity does not negate this evidence. Although the arbitrator agreed it was a "stretch of the facts" to characterize Mr. Jones as "'the hub' of the email activity," he nonetheless found Mr. Jones's computer misuse "involved a significant volume of material" and "constituted a major misuse of government property." Arbitrator's Decision at 10. The record supports this finding.

Mr. Jones next argues that "the Agency did not produce objective criteria defining an 'inappropriate joke' or a 'sexually explicit photograph.'" Pet'r's Br. at 8. Although such phrases are subjective to some extent, many of Mr. Jones's emails were beyond the pale. *See, e.g.,* S.A.181–210 (email attaching photos of a naked woman in lewd poses); S.A.150–151 (graphic "jokes" about adulterous women); S.A.157–71 (a "joke" featuring photographs of muscular women, and unclothed women). Accordingly, this argument lacks merit.

### C. Charge 3: Misuse of Official Time

The arbitrator sustained charge 3, finding that Mr. Jones "consistently misused government property during hours ranging from 7:06 a.m. to 4:08 p.m. with numerous other times between those hours in the course of his

workdays." Arbitrator's Decision at 11. In response to the union's argument that Mr. Jones was permitted some personal time during breaks throughout the day, the arbitrator found "it is clear that the time spent [working on outside employment] was not within the periods of one 30-minute lunch break and two other 15-minute breaks." *Id.* Record evidence showing Mr. Jones repeatedly engaged in outside work at various times throughout the day supports this finding. *See, e.g.,* S.A.27–48, 221–315. Additionally, Mr. Jones's argument that no evidence shows the exact amount of time spent on outside activities is unpersuasive, because doing outside work was prohibited at all times. *See* A.337 (EPA policy prohibiting the use of government office equipment in support of "'for profit' activities such as outside employment or businesses (e.g., selling real estate, preparing tax returns for a fee).").

### D. Charge 4: Improper Use of EPA Title, Address, and Phone Number

The arbitrator found Mr. Jones had repeatedly transmitted documents relating to his outside business using his EPA signature, and thus sustained charge 4. That Mr. Jones had apparently ceased using his EPA phone number in court filings several years earlier, and that the EPA signature was automatically included in outgoing emails were "mitigating factors" that did "not establish a basis for not sustaining the charge where the emails were being sent in [Mr. Jones's] official capacity as an EPA attorney and he was aware of the prohibition against such conduct." Arbitrator's Decision at 12; A.170. Mr. Jones's conclusory argument that this finding "assumes incompetent evidence and/or evidence that was not submitted to the record" is unpersuasive in light of the substantial record evidence showing Mr. Jones's use of his EPA signature block and/or EPA telephone number in outgoing emails related to his outside business. *See, e.g.,* S.A.29, 41, 223, 247, 254, 258, 265, 267, 268–69.

### E. Charge 5: Inappropriate Access to Confidential Information

Charge 5 alleged that Mr. Jones gained "inappropriate access" to Mr. Akindele's confidential financial information. Arbitrator's Decision at 4. The arbitrator sustained charge 5 after considering all submitted evidence, including Mr. Jones's testimony, Mr. Akindele's testimony, and, in particular, Mr. Glaze's testimony that he obtained Mr. Akindele's financial disclosure form and "may have" disclosed its contents to Mr. Jones. Arbitrator's Decision at 13. Mr. Jones argues, again without explanation, that this conclusion "assume[d] incompetent evidence and/or evidence that was not submitted into the record . . . ." Pet'r's Br. at 12. To the contrary, the evidence cited by the arbitrator provides substantial support for this finding. *See, e.g.*, A.169–170 (Mr. Glaze's interview) (stating that he obtained Mr. Akindele's financial disclosure form "and looked at it 'a few months ago'" and "may have said something" to Mr. Jones about it); A.159 (Mr. Akindele's interview) (explaining that he did not know how Mr. Jones could have learned the specific number of his rental homes absent improper access to the information in his financial disclosure).[4]

---

[4] Mr. Jones argues on appeal that "the Arbitrator failed to appropriately assess Mr. Akindele's credibility," because other evidence (particularly Mr. Jones's own testimony) contradicted Mr. Akindele's testimony. Pet'r's Br. at 15. However, it is not the function of this court to "re-weigh conflicting evidence," so this argument does not provide a basis for upsetting the arbitrator's factual findings. *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.")).

The arbitrator also correctly found that EPA's use of a redacted OIG Report did not impinge upon Mr. Jones's due process rights. The OIG Report was redacted because it pertained to multiple employees other than Mr. Jones, whose statements were statutorily protected from release. Mr. Jones does not appear to contest that, until he triggered *in camera* review before the arbitrator, EPA officials deciding his case relied only on the redacted document.[5] Pet'r's Br. at 12–13 (quoting Arbitrator's Decision at 15) (reciting and not appearing to dispute these facts from the Arbitrator's Decision). Following *in camera* review, the arbitrator affirmed the propriety of using the redacted document. Arbitrator's Decision at 15.

On appeal, Mr. Jones argues the arbitrator should have considered his due process argument in accordance with *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368 (Fed. Cir. 1998). In *Stone*, this court held that a deciding official's *ex parte* receipt of new and material evidence constituted a violation of the employee's due process rights. *Id.* at 1377 (However, "[i]f the Board finds that an *ex parte* communication has not introduced new and material information, then there is no due process violation."). In this case, unlike *Stone*, the deciding officials did not appear to have *ex parte* access to the unredacted report, but instead relied on the redacted report in pursuing the charges against Mr. Jones. Moreover, there is no error in the arbitrator's implicit finding that the redacted portion of the report was not "new and material evidence" pursuant to the *Stone* standard. The arbitrator found Mr. Jones had the opportunity to review and respond to the unredacted document, and the deciding officials testified that "they would not have decided the case differently

---

[5] Rather, Mr. Jones appears to dispute the arbitrator's finding that many sources of evidence other than the OIG Report supported the five charges against Mr. Jones. Pet'r's Br. at 13.

regardless of information in the unredacted report." Arbitrator's Decision at 15; *see Stone*, 179 F.3d at 1377 (factors to consider in determining whether evidence is "new and material" include "whether the employee knew of the error and had a chance to respond to it[,] and whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner."). Accordingly, this case does not present a due process violation under *Stone*.[6]

Finally, Mr. Jones argues that a note from the OIG agent conducting the investigation was improperly withheld from him during the grievance process. Pet'r's Br. at 2–3. EPA provided this disputed document to Mr. Jones's union attorney prior to arbitration and it was admitted into evidence at the hearing without objection. Mr. Jones has thus waived this argument by failing to raise it before the arbitrator. *Zingg v. Dep't of the Treasury*, 388 F.3d 839, 843 (Fed. Cir. 2004).

## 2. The Arbitrator Did Not Err In Upholding the Agency's Chosen Penalty of Removal

"It is a well-established rule of civil service law that the penalty for employee misconduct is left to the sound

---

[6]    EPA also argues that the redacted portions of the report are not "new and material" because the arbitrator found "'no evidence'" that Mr. Jones's "'lack of knowledge of the contents of the redacted portions . . . disadvantaged him in any way.'" Respondent's Br. at 22 (quoting Arbitrator's Decision at 15). However, the lack of harm to Mr. Jones seems more pertinent to whether he suffered prejudice from the asserted due process violation, and *Stone* instructs that "such a violation is not subject to the harmless error test." 179 F.3d at 1377. In any event, this prejudice analysis is irrelevant, because there was no due process violation in this case.

discretion of the agency." *Miguel v. Dep't of Army*, 727 F.2d 1081, 1083 (Fed. Cir. 1984). The Board—or the arbitrator in this case—is tasked with assessing whether the agency's penalty is within the "bounds of reasonableness" when considered in light of the relevant *Douglas* factors. *Hayes v. Dep't of Navy*, 727 F.2d 1535, 1540 (Fed. Cir. 1984); *see also Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 332 (1981) (listing twelve factors relevant to the reasonableness of an agency's chosen penalty). Upon consideration of such factors, including Mr. Jones's "egregious violations" and supervisors' resulting "lack of confidence in [his] ability to perform assigned duties," the arbitrator affirmed the agency's chosen penalty of removal. Arbitrator's Decision at 16–17 (applying the relevant *Douglas* factors).

Mr. Jones argues that removal was improper, because other EPA employees and supervisors misused government time and equipment by participating in an annual NCAA office basketball pool. Pet'r's Br. at 14; *see Williams v. Social Sec. Admin.*, 586 F.3d 1365, 1368 (Fed. Cir. 2009) (quoting *Douglas*, 5 M.S.P.B. at 332) ("One of the *Douglas* factors that agencies are required to consider in determining an appropriate penalty for employee misconduct is '(6) consistency of the penalty with those imposed upon other employees for the same or similar offences.'"). The arbitrator, however, found that participating in the annual office basketball pool was not similar to engaging in outside business during work hours or sending inappropriate emails. The arbitrator acted within his discretion in so finding, and in affirming the penalty of removal. *See Kumferman v. Dep't of Navy*, 785 F.2d 286, 291-92 (Fed. Cir. 1986) (quoting *DeWitt v. Dep't of Navy*, 747 F.2d 1442, 1445 (Fed. Cir. 1984)) (holding the Board's affirmance of the penalty of removal was "within the discretionary authority of the Board 'because the record reflects a reasoned concern for the factors appropriate to evaluating a penalty.'").

CONCLUSION

Having considered Mr. Jones's remaining arguments and finding them unpersuasive, this court affirms the arbitrator's decision upholding Mr. Jones's removal from the EPA.

**AFFIRMED**