NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DENNIS ERB,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2021-1756

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-20-0468-I-1.

---

Decided: January 24, 2024

---

JENNIE CATHRYNE BLAINE WATSON, Alan Lescht and Associates, PC, Washington, DC, argued for petitioner. Also represented by CONOR DANIEL AHERN.

KRISTIN ELAINE OLSON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before DYK, TARANTO, and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Dennis Erb was removed from his position in the Department of the Treasury (Treasury) for repeatedly falsifying information on his timecard and for failing to comply with instructions from his supervisor. Mr. Erb appealed to the Merit Systems Protection Board (Board), and an administrative judge affirmed Treasury's removal decision. *Erb v. Dep't of Treasury*, No. DC-0752-20-0468-I-1, 2021 WL 76034 (M.S.P.B. Jan. 6, 2021), J.A. 1–37. This initial decision of the administrative judge became the final decision of the Board. Because substantial evidence supports the Board's determination that Mr. Erb repeatedly falsified information on his timecard and because we sustain the Board's affirmance of both the overall falsification and failure-to-follow-instructions charges, we *affirm*.

## BACKGROUND

Prior to his removal, Mr. Erb held the position of Intelligence Research Specialist with Treasury's Financial Crimes Enforcement Network (FinCEN), Intelligence Division. J.A. 2. On March 4, 2020, Treasury notified Mr. Erb that he would be removed from his position, charging him with (1) falsifying government records for allegedly reporting false information on his timecard over several days in 2018 and (2) failing to follow supervisory instructions in 2018 in which Mr. Erb did not comply with a directive from his supervisor to serve as acting director.

Issues with Mr. Erb's conduct arose well before these 2018 incidents. Ryan Crosby, Mr. Erb's supervisor of several years, offered testimony directed to these issues at a hearing before the administrative judge. *Id.* at 6. In Mr. Crosby's recounting, he had concerns with Mr. Erb's timecard submissions "[a]lmost from the first day that [Mr. Crosby] came to know that [Mr. Erb] would be on [his] team." J.A. 75. Before Mr. Erb joined Mr. Crosby's team,

Mr. Erb's prior supervisor had warned Mr. Crosby "that there [were] indications that [Mr. Erb] may be involved in time card fraud." *Id.*; *see* J.A. 8.

Mr. Crosby testified that, while supervising Mr. Erb, he (1) frequently noticed errors and omissions in Mr. Erb's submitted timecards, (2) repeatedly admonished Mr. Erb to resolve these inaccuracies, and (3) conducted multiple timecard audits because Mr. Erb had exhausted his leave. J.A. 7; J.A. 75. Despite having been provided policies and procedures for timecard submissions, Mr. Erb routinely miscoded his timecards, for example, using sick leave when he should have used annual leave or recording more hours worked than he was entitled to record. J.A. 7; J.A. 71–72. In one instance, Mr. Crosby confronted Mr. Erb about a day in which Mr. Erb claimed sick leave but was seen in a social media post to be on vacation. J.A. 7; J.A. 72. On other occasions, Mr. Erb booked vacations even though he had no annual leave available and had to request advances on his annual leave. J.A. 7–8; J.A. 72. Mr. Crosby recalled that in Mr. Erb's evaluation for fiscal year 2017, Mr. Crosby initially included a comment that Mr. Erb needed to pay closer attention to his timecard submissions. J.A. 8; J.A. 74. Mr. Erb entreated Mr. Crosby to strike this comment, and Mr. Crosby agreed to remove it to help Mr. Erb improve his image at the agency. J.A. 8; J.A. 74.

In response to concerns about Mr. Erb's time and attendance, the Treasury Inspector General (TIG) began investigating Mr. Erb's time and attendance records and facility access records from October 15, 2017 to October 13, 2018. J.A. 211. The resulting report documented numerous instances where (1) Mr. Erb submitted and validated in-office work time but never accessed a FinCEN facility and (2) telework login records indicated that Mr. Erb engaged in little or no telework activity. *Id.*

Based in part on the investigation and the TIG's report, on October 17, 2019, Treasury proposed removing Mr. Erb

from his position based on two charges:  (1) falsification of a government record and (2) failure to follow supervisory instruction.  *Id.* at 209–12.  The evidence that Treasury considered included, in addition to the TIG's report, seven exhibits cited in that report, six memoranda encompassing interviews with witnesses and Mr. Erb, Mr. Erb's timecard and facility access records, and a spreadsheet documenting the times that Mr. Erb remotely logged into the telework system.  *Id.* at 211.

The notice of proposed removal lodged eleven specifications[1] for the falsification charge.  *Id.* at 209–11.  For each specification, Mr. Erb submitted a timecard indicating that he worked in the office or, in one specification, engaged in a full day of telework.  *Id.*  But for each of these specifications, Treasury found that he did not physically report to the FinCEN facility and engaged in little or no telework.  *Id.*  As for the second charge, the notice of proposed removal put forth a single specification in which Mr. Erb's immediate supervisor had assigned him the role of acting director for two days and Mr. Erb immediately reassigned the role to another colleague without his supervisor's approval and departed the office on an unexcused absence.  *Id.* at 211.

On March 4, 2020, after Mr. Erb provided written and oral responses to the proposed removal, Treasury issued a decision removing Mr. Erb from his position.  J.A. 2.  The decision determined that a preponderance of the evidence supported ten of the eleven specifications (Specifications 2 through 11) of the falsification charge and the sole specification of the failure-to-follow-instruction charge articulated in the notice of proposed removal.  J.A. 215.

---

[1]    "Each independent 'specification' constitutes a separate act or event that supports a charge."  *Tartaglia v. Dep't of Veterans Affs.*, 858 F.3d 1405, 1407 n.2 (Fed. Cir. 2017).

In determining the appropriate penalty, Treasury's decision considered the nature and seriousness of the offenses, concluding that both charges were "inimical to [Mr. Erb's] position and the FinCEN mission" and that "[his] behavior towards [his] supervisor undermined management's capacity to maintain employee efficiency and discipline." *Id.* Emphasizing the gravity of Mr. Erb's offenses, the decision explained that "[his] misconduct went to the very core of [his] responsibilities as an Intelligence Research Specialist and called into question [his] reliability, veracity, trustworthiness, and willingness to perform [his] duties." *Id.* Mr. Erb, as Treasury noted, was "on notice about the conduct in question" and "on notice about how to properly code and validate [his] time card." *Id.* at 215–16. According to Treasury, a lesser sanction would not be appropriate because "the seriousness of the conduct underlying the charges and the repetitive nature of [his] conduct (including multiple specifications for one charge alone) support a penalty of removal." *Id.* at 216. Treasury further highlighted "that the penalty of removal under the circumstances outlined in this decision [wa]s consistent with the FinCEN Table of Penalties" and that "a sanction less than removal would have no effect in changing [Mr. Erb's] behavior and would not promote the efficiency of the federal service." *Id.*

Mr. Erb appealed Treasury's removal action to the Board, and the administrative judge issued an initial decision that became the Board's final decision on February 10, 2021. J.A. 29. This final decision sustained each of the charges and declined to mitigate Treasury's selected penalty of removal. *Id.* at 21, 25, 29. Mr. Erb, Mr. Crosby, and several other former colleagues offered testimony in a hearing. *Id.* at 1, 6–13, 22, 26. The Board's decision made adverse credibility determinations against Mr. Erb, crediting the other witnesses' testimonies over his testimony. *Id.* at 12–13. According to the decision, Mr. Erb's testimony was not "direct or straightforward," "contained

improbabilities," and was inconsistent with his deposition testimony. *Id.* at 13. By comparison, the other witnesses' testimonies were clear, direct, straightforward, and consistent with documentary evidence. *Id.* at 12–13. For these reasons, the decision accorded "very little weight" to Mr. Erb's testimony and "significant weight" to the other witnesses' testimonies. *Id.*

Sustaining the falsification charge, the Board found that Treasury had demonstrated that Mr. Erb (1) had incorrectly entered information into his timecards for Specifications 2 through 11 of the falsification charge, and (2) had done so with the intent to deceive or mislead Treasury for his own material gain. *Id.* at 15–21. The Board likewise sustained the failure-to-follow-instructions charge, finding that Mr. Erb's explanation as to why he could not comply with his supervisor's instructions lacked credibility. *Id.* at 24–25.

Turning to nexus and penalty, the Board determined that Treasury established a nexus between Mr. Erb's misconduct and the efficiency of the service and found no error in Treasury's considerations in selecting removal as the penalty. *Id.* at 25, 28–29. As the Board observed, "[t]he Board has long recognized that removal for falsification and dishonest activity promotes the efficiency of the service since such behavior raises serious doubts regarding the appellant's reliability, trustworthiness, and continued fitness for employment[,]" and "the Board has also held that removal for failure to follow instructions is not an unreasonable penalty despite an appellant's superior performance." *Id.* at 28–29 (citations omitted). The Board accordingly affirmed Treasury's removal action. *Id.* at 29.

Mr. Erb timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## STANDARD OF REVIEW

We may set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). "The petitioner bears the burden of establishing error in the Board's decision." *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

## DISCUSSION

On appeal, Mr. Erb alleges that (1) the Board acted arbitrarily in determining that his testimony lacked credibility, (2) substantial evidence does not support the Board's decision to sustain the falsification charge, (3) substantial evidence does not support the Board's decision to sustain the failure-to-follow-instructions charge, and (4) the penalty of removal was unreasonable. As discussed below, we disagree on each count.

### I. Credibility Determinations

Mr. Erb alleges that the Board misapplied the factors for determining credibility outlined in the Board's precedential decision in *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (M.S.P.B. 1987). Appellant's Br. 34–38. The *Hillen* factors are "general internal procedural requirements that the [Board] has established for its adjudicative processes, and our review of the [Board]'s fulfillment of these procedural processes is in that light." *Haebe v. Dep't of Just.*, 288 F.3d 1288, 1302 n.32 (Fed. Cir. 2002). However, we reiterate that credibility "determinations are virtually unreviewable." *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 436 (Fed. Cir. 1986). Here, the Board provided sufficient reasoning for generally giving little weight to Mr. Erb's testimony by referring to his demeanor during the hearing, citing discrepancies in his testimony, and explaining why his testimony "contained improbabilities."

J.A. 12–13. The Board also repeatedly compared Mr. Erb's specific version of events with contrary evidence of record and found his version of events to not be credible. *See, e.g.*, *Id.* at 15–18, 25–26. Mr. Erb has failed to show how the Board's credibility determinations were arbitrary.

## II. Charge of Falsification of Government Records

Mr. Erb challenges the Board's sustainment of Treasury's falsification charge. Appellant's Br. 14–31. To establish a charge of falsification, an agency must prove by a preponderance of the evidence that the employee knowingly supplied wrong information with the intent of defrauding the agency. *Leatherbury v. Dep't of Army*, 524 F.3d 1293, 1300 (Fed. Cir. 2008). We find substantial evidence supports at least four of the ten specifications for the falsification charge and therefore supports the overall charge.

To start, the Board did not err in determining that Mr. Erb supplied wrong information for Specifications 2, 9, 10, and 11. With respect to Specifications 2 and 11, the Board found that Mr. Erb submitted timecards for two days reflecting a full tour of duty in the office and that Mr. Erb admitted these submissions were false. J.A. 15–16, 18. With respect to Specifications 9 and 10, the Board found that Mr. Erb submitted timecards for two days reflecting five hours of in-office work and four hours of sick leave. *Id.* at 18. The Board found that, on both days, Mr. Erb (1) did not work in a FinCEN facility and (2) "claimed sick hours when he was not ill, seeking medical assistance, or attending a routine medical appointment." *Id.* at 18–19. While Mr. Erb testified that he teleworked both days, the Board did not find this testimony credible and gave it little weight. *Id.* at 11–13. Instead, the Board found that Mr. Erb had not remotely logged into the FinCEN network on these days and credited testimony from Mr. Erb's former colleagues that "to justify a full day of work, an employee must be logged into the network" and

that "substantive work require[d] system access." *Id.* at 19. These findings, we conclude, amount to substantial evidence in support of the Board's determination that Treasury proved Mr. Erb supplied wrong information on his timecard for the days corresponding to Specifications 2, 9, 10, and 11.

Next, we do not find merit to Mr. Erb's challenges to the Board's findings of intent for these specifications. The intent element of falsification requires the agency to show that the employee (a) "intended to deceive or mislead the agency" and (b) "intended to defraud the agency for his own private material gain." *Leatherbury*, 524 F.3d at 1300.

As to the first prong of intent, the Board found that Mr. Erb intended to deceive or mislead Treasury because he (1) was repeatedly told not to submit inaccurate time and attendance records, (2) had coded his time properly numerous times and thus knew how to properly code his time, and (3) could not offer any plausible explanation for his errors with respect to Specifications 2, 9, 10, and 11. J.A. 19. For Specifications 2 and 11, the Board did not find credible Mr. Erb's claims that internal system errors or another person changed his submission or that he unintentionally miscoded his time.[2] *Id.* at 15–16, 19. For Specifications 9 and 10, Mr. Erb offered no explanation for the timecard errors. *Id.* at 18. Substantial evidence accordingly supports the Board's determination that Mr. Erb intended to mislead or deceive Treasury.

---

[2]     On appeal, Mr. Erb requests that we take judicial notice of the fact that the federal government was shut down on the day corresponding to Specification 2. ECF No. 83. We do not see this fact as a basis for disturbing the Board's finding that Mr. Erb submitted a false time report with intent.

As to the second prong of intent, the Board did not err in finding that Treasury proved Mr. Erb engaged in time-card falsification for his own material gain. We are unpersuaded by Mr. Erb's argument that salaried employees with good performance reviews cannot gain any material benefit from falsifying their timecards. Appellant's Reply Br. 15–18. As the Board explained, as a result of Mr. Erb's misconduct, he "received pay for hours he performed minimal, if any work" and "was being paid for working in the office while he was not working, which allowed him to receive pay instead of tap[p]ing into or depleting his scarce annual leave hours." J.A. 20. We conclude that substantial evidence supports the Board's determination that Mr. Erb engaged in this misconduct for his own material gain.

In sum, we sustain Specifications 2, 9, 10, and 11 and thus sustain the overall falsification charge. We do not reach Mr. Erb's challenges to Specifications 3 through 8 because, as discussed below, we may uphold the penalty of removal on the basis of the overall sustained falsification charge supported by the four sustained specifications.

III. Charge of Failure to Follow Supervisory Instructions

Under the Board's standard for proving a charge of failure to follow instructions—which Mr. Erb does not challenge—"an agency must establish that the employee: (1) was given proper instructions, and (2) failed to follow the instructions, without regard to whether the failure was intentional or unintentional." *Powell v. U.S. Postal Serv.*, 122 M.S.P.R. 60, ¶ 5 (M.S.P.B. 2014). Mr. Erb alleges the Board erred in sustaining this charge because Mr. Erb acted reasonably when he, in response to being assigned to serve as acting director by his immediate supervisor, reassigned a colleague to that role without notifying his immediate supervisor. Appellant's Br. 31–34. The Board found that Mr. Erb: (1) improperly delegated his acting supervisory responsibility, (2) provided an unreasonable justification for this delegation (that he was

teleworking), and (3) failed to communicate with his direct supervisor despite being expressly told to do so. J.A. 24–25. Substantial evidence supports the Board's determination that Mr. Erb failed to comply with his supervisor's instructions, and we thus sustain the Board's ruling as to this charge.

## IV. Penalty Determination

Finally, the Board did not err in sustaining Treasury's selected penalty of removal. "It is well-established that selecting the penalty for employee misconduct is left to the agency's discretion." *Webster v. Dep't of Army*, 911 F.2d 679, 685 (Fed. Cir. 1990). "This court will not disturb the agency's choice unless the severity of its action appears totally unwarranted in light of the relevant factors." *DeWitt v. Dep't of Navy*, 747 F.2d 1442, 1445 (Fed. Cir. 1984), *cert. denied*, 470 U.S. 1054 (1985). On appeal, Mr. Erb critiques Treasury's application of the *Douglas v. Veterans Administration* factors, twelve non-exhaustive factors an agency may use to determine the appropriateness of a penalty. 5 M.S.P.R. 280, 305–06 (M.S.P.B. 1981); *see* Appellant's Br. 38–46. In Mr. Erb's view, Treasury "failed to provide adequate evidence to support the severe penalty of removal and communicate why it is the appropriate penalty in this circumstance." Appellant's Br. 45. Mr. Erb does not allege that Treasury or the Board failed to consider any specific factor and, instead, seeks to have us reweigh the facts and make our own determination as to the penalty that should have been imposed. We decline to do so. *See Tartaglia*, 858 F.3d at 1408–09 (explaining that "we may not" reweigh evidence in determining the appropriate penalty for a case).

We likewise find no abuse of discretion in the Board's decision to affirm Treasury's penalty. In its removal decision, Treasury expressly referred to the twelve *Douglas* factors, noted that certain *Douglas* factors were inapplicable or neutral, and analyzed each relevant and aggravating factor to determine that removal was the appropriate

penalty. J.A. 215–16, 215 n.1. And the Board acknowledged the detailed analysis that Treasury underwent in deciding to remove Mr. Erb. *See* J.A. 28. We are unpersuaded that removal was an unreasonable penalty.

This case, we note, does not present a scenario in which remand would be appropriate because we have "upheld fewer than all the charges against an employee." *Guise v. Dep't of Just.*, 330 F.3d 1376, 1381 (Fed. Cir. 2003). Our decision in *Guise* teaches that in such a situation, the agency's selected penalty may be called into question. *Hathaway v. Dep't of Just.*, 384 F.3d 1342, 1353 (Fed. Cir. 2004). Here, having sustained all charges, we do not understand the *Guise* rule to be controlling.

To the extent the *Guise* rule applies in equal force to the present case, where we have sustained fewer than all specifications of the falsification charge, "when the agency makes . . . clear before the Board" that "the agency itself would have imposed the same penalty on the basis of the sustained charges that it chose on the basis of the combined charges," the agency's chosen penalty is entitled to deference. *Lachance v. Devall*, 178 F.3d 1246, 1259 (Fed. Cir. 1999). Treasury's removal decision viewed as aggravating factors that Mr. Erb "had been specifically advised in the past on the need for proper timecard entry" and was "on notice about how to properly code and validate [his] time card." J.A. 215–16. The removal decision emphasized that the seriousness of Mr. Erb's misconduct, and, in particular, "the repetitive nature of [his] conduct (including multiple specifications for [the falsification] charge []) support[ed] a penalty of removal." *Id.* at 216. Treasury additionally determined removal to be consistent with the FinCEN Table of Penalties, *id.* at 216, and Mr. Erb on appeal does not dispute that the Table of Penalties deems removal to be

reasonable for even a single falsification offense.[3]  Consistent with the reasoning for declining to mitigate the penalty articulated in Treasury's decision, our opinion today leaves undisturbed Treasury's findings with respect to earlier concerns with Mr. Erb's conduct, sustains both charges, and, in sustaining multiple specifications of the falsification charge, confirms the repetitive nature of Mr. Erb's misconduct.  Mr. Erb on appeal identifies nothing suggesting that Treasury would have reached a different result absent the six other specifications underlying the falsification charge.  We thus see no basis for overturning Treasury's selected penalty of removal.

## CONCLUSION

We have considered Mr. Erb's remaining arguments and find them unpersuasive.  For the foregoing reasons, we *affirm* the Board's decision to affirm Treasury's removal of Mr. Erb.

## **AFFIRMED**

---

[3]  Oral Arg. at 45:48–47:18 (available at https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-1756_12042023.mp3) (describing that FinCEN's Table of Penalties indicated removal was within the appropriate range of penalties for first, second, and third offenses of falsification of government records).